United States District Court
Southern District of Texas
Corpus Christi Division

FEB 0 7 2000

**MSJ Radio Corporation**

vs.

**Reina Broadcasting, Inc.**

No. 00-049
[Jury Requested]

# BENCH BRIEF

To the Honorable Court:

    MSJ Radio Corporation ("MSJ") respectfully files this Bench Brief.

### 11 U.S.C. §1125

1.

    **Respectfully Submitted,**

_/s/ David Sibley_

**David A. Sibley**
**Attorney At Law**
P.O. Box 9610
Corpus Christi, Texas 78469-9610
(361) 993-5585 — Telephone
(888) 248-1673 — Telecopier
State Bar No. 18337600
Federal I.D. 10053
ATTORNEY-IN-CHARGE FOR **MSJ**

# CERTIFICATE SERVICE

On Monday, February 7, 2000, I served this as follows:

**VIA TELECOPY NO. (310) 798-0738**
Christopher Blaxland

_/s/ David Sibley_

David A. Sibley

1

5.

# 11 U.S.C. §1116

(a) Jurisdiction; service

The several courts vested with jurisdiction of civil actions arising under this chapter **shall have power to grant injunctions**, according to the **principles of equity** and upon such terms as the court may **deem reasonable**, to **prevent the violation of any right of the registrant of a mark** registered in the Patent and Trademark Office or to prevent a violation under subsection (a) or (c) of section 1125 of this title. Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction. Any such injunction granted upon hearing, after notice to the defendant, by any district court of the United States, may be served on the parties against whom such injunction is granted anywhere in the United States where they may be found, and shall be operative and may be enforced by proceedings to punish for contempt, or otherwise, by the court by which such injunction was granted, or by any other United States district court in whose jurisdiction the defendant may be found.

(b) Transfer of certified copies of court papers

The said courts shall have jurisdiction to enforce said injunction, as provided in this chapter, as fully as if the injunction had been granted by the district court in which it is sought to be enforced. The clerk of the court or judge granting the injunction shall, when required to do so by the court before which application to enforce said injunction is made, transfer without delay to said court a certified copy of all papers on file in his office upon which said injunction was granted.

(c) Notice to Commissioner

It shall be the duty of the clerks of such courts within one month after the filing of any action, suit, or proceeding involving a mark registered under the provisions of this chapter to give notice thereof in writing to the Commissioner setting forth in order so far as known the names and addresses of the litigants and the designating number or numbers of the registration or registrations upon which the action, suit, or proceeding has been brought, and in the event any other registration be subsequently included in the action, suit, or proceeding by amendment, answer, or other pleading, the clerk shall give like notice thereof to the Commissioner, and within one month after the judgment is entered or an appeal is taken the clerk of the court shall give notice thereof to the Commissioner, and it shall be the duty of the Commissioner on receipt of such notice forthwith to endorse the same upon the file wrapper of the said registration or registrations and to incorporate the same as a part of the contents of said file wrapper.

(d) Civil actions arising out of use of counterfeit marks

(1)(A) In the case of a civil action arising under section 1114(1)(a) of this title or section 380 of Title 36 with respect to a violation that consists of using a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services, the court may, upon ex parte application, grant an order under subsection (a) of this section pursuant to this subsection providing for the seizure of goods and counterfeit marks involved in such violation and the means of making such marks, and records documenting the manufacture, sale, or receipt of things involved in such violation.
(B) As used in this subsection the term "counterfeit mark" means--
(i) a counterfeit of a mark that is registered on the principal register in the United States Patent

and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; or
(ii) a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of this chapter are made available by reason of section 380 of Title 36;

but such term does not include any mark or designation used on or in connection with goods or services of which the manufacture or producer was, at the time of the manufacture or production in question authorized to use the mark or designation for the type of goods or services so manufactured or produced, by the holder of the right to use such mark or designation.
(2) The court shall not receive an application under this subsection unless the applicant has given such notice of the application as is reasonable under the circumstances to the United States attorney for the judicial district in which such order is sought. Such attorney may participate in the proceedings arising under such application if such proceedings may affect evidence of an offense against the United States. The court may deny such application if the court determines that the public interest in a potential prosecution so requires.
(3) The application for an order under this subsection shall--
(A) be based on an affidavit or the verified complaint establishing facts sufficient to support the findings of fact and conclusions of law required for such order; and
(B) contain the additional information required by paragraph (5) of this subsection to be set forth in such order.
(4) The court shall not grant such an application unless--
(A) the person obtaining an order under this subsection provides the security determined adequate by the court for the payment of such damages as any person may be entitled to recover as a result of a wrongful seizure or wrongful attempted seizure under this subsection; and
(B) the court finds that it clearly appears from specific facts that--
(i) an order other than an ex parte seizure order is not adequate to achieve the purposes of section 1114 of this title;
(ii) the applicant has not publicized the requested seizure;
(iii) the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services;
(iv) an immediate and irreparable injury will occur if such seizure is not ordered;
(v) the matter to be seized will be located at the place identified in the application;
(vi) the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application; and
(vii) the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person.
(5) An order under this subsection shall set forth--
(A) the findings of fact and conclusions of law required for the order;
(B) a particular description of the matter to be seized, and a description of each place at which such matter is to be seized;
(C) the time period, which shall end not later than seven days after the date on which such order is issued, during which the seizure is to be made;
(D) the amount of security required to be provided under this subsection; and
(E) a date for the hearing required under paragraph (10) of this subsection.
(6) The court shall take appropriate action to protect the person against whom an order under this subsection is directed from publicity, by or at the behest of the plaintiff, about such order and any seizure under such order.
(7) Any materials seized under this subsection shall be taken into the custody of the court. The court shall enter an appropriate protective order with respect to discovery by the applicant of any records that have been seized. The protective order shall provide for appropriate

3

procedures to assure that confidential information contained in such records is not improperly disclosed to the applicant.

(8) An order under this subsection, together with the supporting documents, shall be sealed until the person against whom the order is directed has an opportunity to contest such order, except that any person against whom such order is issued shall have access to such order and supporting documents after the seizure has been carried out.

(9) The court shall order that service of a copy of the order under this subsection shall be made by a Federal law enforcement officer (such as a United States marshal or an officer or agent of the United States Customs Service, Secret Service, Federal Bureau of Investigation, or Post Office) or may be made by a State or local law enforcement officer, who, upon making service, shall carry out the seizure under the order. The court shall issue orders, when appropriate, to protect the defendant from undue damage from the disclosure of trade secrets or other confidential information during the course of the seizure, including, when appropriate, orders restricting the access of the applicant (or any agent or employee of the applicant) to such secrets or information.

(10)(A) The court shall hold a hearing, unless waived by all the parties, on the date set by the court in the order of seizure. That date shall be not sooner than ten days after the order is issued and not later than fifteen days after the order is issued, unless the applicant for the order shows good cause for another date or unless the party against whom such order is directed consents to another date for such hearing. At such hearing the party obtaining the order shall have the burden to prove that the facts supporting findings of fact and conclusions of law necessary to support such order are still in effect. If that party fails to meet that burden, the seizure order shall be dissolved or modified appropriately.

(B) In connection with a hearing under this paragraph, the court may make such orders modifying the time limits for discovery under the Rules of Civil Procedure as may be necessary to prevent the frustration of the purposes of such hearing.

(11) A person who suffers damage by reason of a wrongful seizure under this subsection has a cause of action against the applicant for the order under which such seizure was made, and shall be entitled to recover such relief as may be appropriate, including damages for lost profits, cost of materials, loss of good will, and punitive damages in instances where the seizure was sought in bad faith, and, unless the court finds extenuating circumstances, to recover a reasonable attorney's fee. The court in its discretion may award prejudgment interest on relief recovered under this paragraph, at an annual interest rate established under section 6621 of Title 26, commencing on the date of service of the claimant's pleading setting forth the claim under this paragraph and ending on the date such recovery is granted, or for such shorter time as the court deems appropriate.

4

## 11 U.S.C. §1117

a) When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.
(b) In assessing damages under subsection (a) of this section, the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee, in the case of any violation of section 1114(1)(a) of this title or section 380 of Title 36 that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services. In such cases, the court may in its discretion award prejudgment interest on such amount at an annual interest rate established under section 6621 of Title 26, commencing on the date of the service of the claimant's pleadings setting forth the claim for such entry and ending on the date such entry is made, or for such shorter time as the court deems appropriate.
(c) In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of--
(1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
(2) if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

# 11 U.S.C. §1121

a) The district and territorial courts of the United States shall have **original jurisdiction** and the courts of appeal of the United States (other than the United States Court of Appeals for the Federal Circuit) shall have appellate jurisdiction, of **all actions arising under this chapter**, **without regard to the amount in controversy** or to diversity or lack of diversity of the citizenship of the parties.
(b) No State or other jurisdiction of the United States or any political subdivision or any agency thereof may require alteration of a registered mark, or require that additional trademarks, service marks, trade names, or corporate names that may be associated with or incorporated into the registered mark be displayed in the mark in a manner differing from the display of such additional trademarks, service marks, trade names, or corporate names contemplated by the registered mark as exhibited in the certificate of registration issued by the United States Patent and Trademark Office.

## 11 U.S.C. §1125

(a) Civil action

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any **word, term, name, symbol, or device, or any combination thereof**, or any **false designation of origin**, false or misleading description of fact, or false or misleading representation of fact, which--
(A) is **likely to cause confusion**, or to cause mistake, or to **deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person**, or
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, **shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.**
(2) As used in this subsection, the term "any person" includes any State, instrumentality of a State or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.
(3) In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional.

(b) Importation

Any goods marked or labeled in contravention of the provisions of this section shall not be imported into the United States or admitted to entry at any customhouse of the United States. The owner, importer, or consignee of goods refused entry at any customhouse under this section may have any recourse by protest or appeal that is given under the customs revenue laws or may have the remedy given by this chapter in cases involving goods refused entry or seized.

(c) Remedies for dilution of famous marks

(1) The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to **an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark**, and to obtain such other relief as is provided in this subsection. In determining whether a mark is distinctive and famous, a court may consider factors such as, but not limited to--
(A) the degree of inherent or **acquired distinctiveness** of the mark;
(B) the **duration and extent of use of the mark** in connection with the goods or services with which the mark is used;
(C) the **duration and extent of advertising and publicity** of the mark;
(D) the **geographical** extent of the trading area in which the mark is used;
(E) the channels of trade for the goods or services with which the mark is used;
(F) the **degree of recognition of the mark in the trading areas** and channels of trade used by the marks' owner and the person against whom the injunction is sought;
(G) the nature and extent of use of the same or **similar marks** by third parties; and
(H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

(2) In an action brought under this subsection, the owner of the famous mark shall be entitled only to injunctive relief as set forth in section 1116 of this title unless the person against whom the injunction is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark. If such willful intent is proven, the owner of the famous mark shall also be entitled to the remedies set forth in sections 1117(a) and 1118 of this title, subject to the discretion of the court and the principles of equity.
(3) The ownership by a person of a valid registration under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register shall be a complete bar to an action against that person, with respect to that mark, that is brought by another person under the common law or a statute of a State and that seeks to prevent dilution of the distinctiveness of a mark, label, or form of advertisement.
(4) The following shall not be actionable under this section:
(A) Fair use of a famous mark by another person in comparative commercial advertising or promotion to identify the competing goods or services of the owner of the famous mark.
(B) Noncommercial use of a mark.
(C) All forms of news reporting and news commentary.

13. Trademarks or names protected--Generally

Lanham Act section prohibiting use of false description or representation in connection with any goods or services **protects qualifying unregistered trademarks**. Two Pesos, Inc. v. Taco Cabana, Inc., U.S.Tex.1992, 112 S.Ct. 2753, 505 U.S. 763, 120 L.Ed.2d 615, 23 U.S.P.Q.2d 1081, rehearing denied 113 S.Ct. 20, 505 U.S. 1244, 120 L.Ed.2d 947.

While claim under infringement provision of Lanham Act requires that mark be federally registered trademark, claim under Act's "false designation of origin" provision **does not require that mark or name be federally registered and is commonly used to prevent infringement of unregistered trademarks**. PHC, Inc. v. Pioneer Healthcare, Inc., C.A.1 (Mass.) 1996, 75 F.3d 75, 37 U.S.P.Q.2d 1652.

Shape of cervical collar was a functional design for which manufacturer could not claim exclusive use for purposes of establishing unfair competition by appropriation of trade dress. Charles Greiner & Co., Inc. v. Mari-Med Mfg., Inc., C.A.Fed. (R.I.) 1992, 962 F.2d 1031, 22 U.S.P.Q.2d 1526.

Under both this section and New Jersey law, functional aspects of product or service may not be protected under trademark law, or under related unfair competition doctrines based on possible confusion as to source of origin of product or services; to establish "unprivileged imitation" of competitor's product, plaintiff must establish both "non-functionality" and "secondary meaning." U.S. Golf Ass'n v. St. Andrews Systems, Data-Max, Inc., C.A.3 (N.J.) 1984, 749 F.2d 1028, 224 U.S.P.Q. 646.

Subsec. (a) of this section governing trademarks which prohibits false designation of origin and false description encompasses broad spectrum of marks, symbols, design elements and characters; thus, symbols of orange automobile with confederate flag emblem, prominently featured on successful television series, fell within ambit of subsec. (a) of this section. Warner Bros., Inc. v. Gay Toys, Inc., C.A.2 (N.Y.) 1981, 658 F.2d 76, 211 U.S.P.Q. 1017, on remand 553 F.Supp. 1018, 221 U.S.P.Q. 741.

Where none of features cited by manufacturer and marketer of weight-reducing belt in its unfair competition action under this chapter could properly have been classified as a mere arbitrary embellishment adopted for purposes of identification and individuality, they were beyond scope of protection afforded by this chapter. Vibrant Sales, Inc. v. New Body Boutique, Inc., C.A.2 (N.Y.) 1981, 652 F.2d 299, 211 U.S.P.Q. 297, certiorari denied 102 S.Ct. 1257, 455 U.S. 909, 71 L.Ed.2d 448, 213 U.S.P.Q. 1056, on remand 105 F.R.D. 553.

Both this section relating to false designation of origin of goods and §§ 1114 of this title relating to infringement of registered trademark preclude use of another's trademark in a manner likely to confuse the public about the origin of goods. International Order of Job's Daughters v. Lindeburg and Co., C.A.9 (Cal.) 1980, 633 F.2d 912, 208 U.S.P.Q. 718, certiorari denied 101 S.Ct. 3086, 452 U.S. 941, 69 L.Ed.2d 956, 213 U.S.P.Q. 1056.

Combination of white boots, white shorts, blue blouse, and white star-studded vest and belt was an arbitrary design which made otherwise functional uniform worn by plaintiff's cheerleading group trademarkable despite claim by distributor and exhibitor of allegedly infringing film that uniform was a purely functional item. Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., C.A.2 (N.Y.) 1979, 604 F.2d 200, 203 U.S.P.Q. 161.

Although one would not initially suppose that blue and red and blue capsules containing different dosages of trademarked peripheral vasodilator to be functional, such colors were not to be denied protection under prohibition of this section on false designation of source or origin since other color combinations were available to defendant manufacturers and wholesalers, who marketed the prescription generic drug in capsules of the same color, and case for functionality depended on evidence that copying whatever colors plaintiff had chosen served a number of utilitarian purposes essential to effective competition, and with respect to secondary meaning it could not be said that plaintiff would necessarily be unable to establish that consumers had come to associate its colors with its trademark. Ives Laboratories, Inc. v. Darby Drug Co., Inc., C.A.2 (N.Y.) 1979, 601 F.2d 631, 202 U.S.P.Q. 548, on remand 488 F.Supp. 394, 206 U.S.P.Q. 238.

Financial company's slogans "Don't Leave Home Without It," "Don't Leave Home Without Them," and "Don't Leave Home Without Us" were distinctive and famous for purpose of Lanham Act's antidilution provision, based on slogans' acquired distinctiveness, duration and scope of use and advertising, wide recognition, absence of use by others, and registration with Patent and Trademark Office (PTO). American Exp. Co. v. CFK, Inc., E.D.Mich.1996, 947 F.Supp. 310, 41 U.S.P.Q.2d 1756.

Service mark "PINEHURST," as used to refer to golf courses, was an inherently distinctive mark. Pebble Beach Co. v. Tour 18 I, Ltd., S.D.Tex.1996, 942 F.Supp. 1513, affirmed as modified 155 F.3d 526, 48 U.S.P.Q.2d 1065, rehearing denied.

**Lanham Act protects unregistered marks as well as registered ones so long as unregistered mark is recognized by public as identifying plaintiff's goods or services and not some other party's goods or services.** Barmasters Bartending School, Inc. v. Authentic Bartending School, Inc., E.D.Pa.1996, 931 F.Supp. 377.

Instruction manual and other elements authored by interactive football game's licensee were not protected by licensor's trade dress; consumer association of certain licensee-created features with licensor's game was anticipated by language of licensing agreement and was fair because those elements would pass on good will licensee earned through its other games. Interactive Network, Inc. v. NTN Communications, Inc., N.D.Cal.1995, 875 F.Supp. 1398, 34 U.S.P.Q.2d 1380.

Trade dress is protectible if it is inherently distinctive or if it has acquired distinctiveness through secondary meaning; additionally, infringed trade dress must be nonfunctional. FASA Corp. v. Playmates Toys, Inc., N.D.Ill.1994, 869 F.Supp. 1334, 34 U.S.P.Q.2d 1481.

To qualify for protection under Lanham Act and common law, unregistered trade name had to be suggestive, arbitrary or fanciful, or descriptive with secondary meaning. Metro Brokers, Inc. v. Tann, D.Colo.1993, 815 F.Supp. 377, 28 U.S.P.Q.2d 1306.

To extent Lanham Act protects unregistered prior users, that protection is limited to a trade area. Genny's Diner & Pub, Inc. v. Sweet Daddy's, Inc., W.D.Ky.1993, 812 F.Supp. 744.

Mark "LENCO" was arbitrary or fanciful trademark because it was completely unrelated to electronic products it represented, and was entitled to trademark protection without establishing secondary meaning. NLC, Inc. v. LENCO Electronics, Inc., E.D.Mo.1992, 798 F.Supp. 1419, 24 U.S.P.Q.2d 1551.

10

The following classifications apply in determining eligibility for trademark status and degree of protection accorded: generic, which is ineligible for protection; descriptive, which is eligible for protection with proof of secondary meaning; suggestive, which is eligible for protection without proof of secondary meaning; and arbitrary or fanciful, which is eligible for protection without proof of secondary meaning and with ease of establishing infringement. Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., E.D.N.Y.1992, 786 F.Supp. 182, affirmed in part, vacated in part 973 F.2d 1033, 24 U.S.P.Q.2d 1161.

Where graphic elements that might otherwise be considered trade dress are part of registered trademark, that mark should also be entitled to broader protection afforded to trade dress. Hard Rock Cafe Licensing Corp. v. Pacific Graphics, Inc., W.D.Wash.1991, 776 F.Supp. 1454, 21 U.S.P.Q.2d 1368.

For purposes of determining whether existing unregistered trademark is entitled to protection from introduction of another similar trademark, court must ascertain whether first mark is generic, descriptive, suggestive, or arbitrary or fanciful. Bernard v. Commerce Drug Co., Inc., E.D.N.Y.1991, 774 F.Supp. 103, 20 U.S.P.Q.2d 1777, affirmed 964 F.2d 1338, 23 U.S.P.Q.2d 1231.

Graphic of bursting thermometer used in insurance plan administrator's advertising campaign was neither used as mark nor functioned to identify and distinguish plan from other plans and, thus, did not qualify as potentially protectable trademark under Lanham Act section protecting false designation of origin of goods or services; thermometer artwork was used and functioned as attention-getting device, rather than identifying mark. Murphy v. Provident Mut. Life Ins. Co. of Philadelphia, D.Conn.1990, 756 F.Supp. 83, 14 U.S.P.Q.2d 1825, affirmed 923 F.2d 923, 17 U.S.P.Q.2d 1299, certiorari denied 112 S.Ct. 65, 502 U.S. 814, 116 L.Ed.2d 40.

**Lanham Act protects names of popular musical recording groups even though that name is not registered trademark.** Grondin v. Rossington, S.D.N.Y.1988, 690 F.Supp. 200, 8 U.S.P.Q.2d 1108.

Cruise line's use of "Carnival" trade name and mark did not tell potential customer what its services were, and were meaningless as related to a cruise line, and thus were unique, arbitrary, and strong, and entitled to protection under trademark law. Blumenfeld Development Corp. v. Carnival Cruise Lines, Inc., E.D.Pa.1987, 669 F.Supp. 1297, 4 U.S.P.Q.2d 1577.

Under Lanham Trade-Mark Act, product feature is considered nonfunctional and thus entitled to trademark protection if it serves no purpose other than identification of product's source. Keystone Camera Products Corp. v. Ansco Photo-Optical Products Corp., N.D.Ill.1987, 667 F.Supp. 1221, 3 U.S.P.Q.2d 1797.

Nebraska bank's service mark "Bank-in-a-Billfold" was valid and protectable where it was registered and incontestable. Omaha Nat. Bank v. Citibank (South Dakota), N.A., D.Neb.1986, 633 F.Supp. 231, 229 U.S.P.Q. 51.

Jewelry settings were "functional" and therefore not subject to protection of this section, even though other factors such as high quality of stones used and excellence of workmanship contributed to inventor's success, where settings were directly related to physical requirements essential to commercial success, and policy considerations counseled against protection under this section. Gemveto Jewelry Co., Inc. v. Jeff Cooper Inc., S.D.N.Y.1983, 568 F.Supp. 319, 219 U.S.P.Q. 806.

11

Trade names are divided into four categories: (1) generic, which refers to the basic nature of the wares or services provided rather than to the more idiosyncratic characteristics of a particular product and such marks are not protectable; (2) descriptive, which is one which portrays the characteristics of the article or service to which it refers and which are entitled to protection of this chapter only if they have acquired a secondary meaning; (3) suggestive, which connotes rather than describes some particular product or service and requires use of a consumer's ingenuity to envisage nature of the product or service and such terms need not have acquired secondary meaning to be eligible for protection; and (4) arbitrary or fanciful. <u>Railroad Salvage of Conn., Inc. v. Railroad Salvage, Inc.</u>, D.C.R.I.1983, 561 F.Supp. 1014, 219 U.S.P.Q. 167.

This section imposes no restraint on the free marketing of functional marks which consumers or manufacturers mount on collateral items as a means of personal expression. <u>Bi-Rite Enterprises, Inc. v. Button Master</u>, S.D.N.Y.1983, 555 F.Supp. 1188, 217 U.S.P.Q. 910, supplemented <u>578 F.Supp. 59.</u>

This section protects unregistered trademarks and such protection includes protection against false representation involving unregistered certification marks. <u>State of Fla. v. Real Juices, Inc.</u>, M.D.Fla.1971, 330 F.Supp. 428, 171 U.S.P.Q. 66.

This section protects registered certification marks. <u>State of Fla. v. Real Juices, Inc.</u>, M.D.Fla.1971, 330 F.Supp. 428, 171 U.S.P.Q. 66.

Competitor's use of same trade name to describe the very similar boats that it manufactured warranted inference of likelihood of customer confusion, such as might support claim under Lanham Act for false designation of origin and false description or unfair competition. <u>American Sleek Craft, Inc. v. Nescher</u>, D.Ariz.1991, 131 B.R. 991, 22 U.S.P.Q.2d 1255.

12